# HAUSS *v.* MERRELL.

---

PATENTS; INTERFERENCE; REISSUE; CLAIMS.

1. In a reissue application, an attempt to enlarge the scope of the application so as to appropriate an intervening invention will not be permitted. (Following *Manly* v. *Williams*, 37 App. D. C. 194.)

2. In an interference proceeding, the claims will, if possible, be given an interpretation consistent with the specification in which they originated.

3. In an interference involving an improved process of preparing desiccated milk powder, between a patentee, who was the junior party, and a prior applicant, who applied for a reissue and copied the claims in issue, which claims provided for separating the desiccated milk from the air and water vapor before condensation of the water vapor carried by the air occurs, it was *held*, upon a review of the record, that the senior party had no right to make the claims of the issue, in that his original specification failed to disclose a heated desiccating chamber wall to prevent condensation of the water vapor

carried by the air, or that he appreciated that any advantage would result from such a construction.

No. 1198.   Patent Appeals.   Submitted January 16, 1919.   Decided March 3, 1919.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.            *Reversed.*

The facts are stated in the opinion.

*Mr. C. W. Miles* and *Mr. Harry B. Rook* for the appellant.

*Mr. H. P. Denison* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

Appeal from a decision of an Assistant Commissioner of Patents in an interference proceeding in which priority was awarded the appellee, Oliver E. Merrell.

The invention relates to an improved process of preparing desiccated milk and other similar food products in a finely divided or powdered state.   David J. Hauss's application was filed November 16, 1914, and a patent issued on December 7, 1915.   The Hauss specification declares that one of the objects of his invention "is to provide an improved method whereby soluble finely divided or flour desiccated milk may be prepared free from mechanical or foreign material, or hard gritty or insoluble lumps or particles, and in sterilized condition. Another object is to provide an improved method capable of being continuously carried out, and enabling the product to be conveniently isolated and recovered."   In an accompanying drawing is shown *a desiccating chamber A, having a jacket 2, by means of which the side walls of said chamber are heated.* Heating coils 3, through which steam or other heating medium is circulated through said jacket to be heated by contact with said coil and thereby uniformly heat the walls of the chamber A to the desired degree without liability of overheating said

walls at any point or locality. Later in the specification it is stated that "the jacket 2 serves to keep the upper portion of the chamber heated and prevents any condensation of moisture on its inner walls to which the milk or particles might adhere." The claims involved are as follows:

"1. The process of producing desiccated milk powder which comprises removing a portion of the water contents of the milk by evaporation, atomizing the heated condensed milk in a chamber, introducing sufficient heat to desiccate the milk in a current of heated air introduced through the atomizer, and separating the desiccated milk from the air and water vapor before condensation of the water vapor carried by the air occurs."

"2. The process of producing desiccated milk powder which comprises removing a portion of the water contents of the milk by evaporation, atomizing the heated condensed milk by means of an excess of heated air in a chamber thereby utilizing the air employed to atomize the condensed milk as a carrier for all the heat necessary to desiccate the condensed milk, and separating the desiccated milk powder from the air while the air is still in a heated condition and free from moisture resulting from condensation of the water vapor carried thereby."

After the issuance of the Hauss patent, containing the above claims, Merrell applied for a reissue of his patent, No. 1,136,356, dated April 20, 1915, the application for which was filed on February 16, 1912, and he finally was permitted to copy claims 1 and 2 of the Hauss patent, this interference following. Hauss moved to dissolve on the ground that Merrell's patent fails to disclose the invention in controversy, and hence that Merrell has no right to make the claims. The Examiner and Assistant Commissioner sustained Merrell's contention, while the Examiners in Chief found for Hauss. That tribunal invited attention to the fact that the Hauss process calls for the heating of the desiccating-chamber walls; that there is "a clear difference between the Merrell and Hauss devices, the only point in the case being whether or not the difference is brought out in the counts." The board then stated that the counts originated with Hauss, and that the above-mentioned difference be-

tween the two devices was the principal argument successfully advanced for the allowance of his claims.

In *Manly* v. *Williams,* 37 App. D. C. 194, 201, this court had occasion to state the rule relating to the reissue of patents, in effect that attempts to enlarge the scope of an application once filed or of a patent once granted should be frowned upon, especially where the result would be the appropriation of an intervening invention. So, in this case, it should clearly appear that Merrell's original specification furnishes a proper basis for these claims, especially as he had taken out other patents relating to this art. Thus, his patent dated July 23, 1907, No. 860,929, discloses a process for desiccating milk which broadly anticipates the present process. In fact, there is perhaps less difference between that process and the process disclosed in the Merrell specification here in review than there is between the later Merrell process and that of Hauss. Merrell patent No. 954,451, dated April 12, 1910, discloses another process for desiccating milk very similar to that of the prior patent, except that provision is made in the later patent for a heat-resisting jacket to prevent excessive heating of the milk in its passage through the atomizer. When the application for the Merrell patent here involved was filed, therefore, the art was so well developed that he should have known exactly what improvements he had made. The walls of the desiccating chamber shown and described by him are not heated, and we agree with the Examiners in Chief that, the Patent Office having found this element in the Hauss disclosure to be material and to constitute a patentable improvement over the prior art, it would be inconsistent and unjust now to permit Merrell, who did not disclose this element, to appropriate it. These claims having originated with Hauss, they should be given an interpretation, if possible, that will vitalize the disclosure in his specification; in other words, an interpretation consistent with and protecting that disclosure.

We therefore are of opinion that the Merrell patent contains no basis for the words, "and separating the desiccated milk from the air and water vapor before condensation of the water

vapor carried by the air occurs," as used in the Hauss patent, where they originated and with reference to which they must be interpreted. Hauss's drawing and specification not only fully disclose the heated desiccating-chamber walls, but carefully point out the advantages to be derived therefrom. Merrell, on the contrary, shows no such heated walls, nor does his specification indicate that he appreciated that any advantages would result from such a construction. In short, there is nothing to indicate that the idea ever occurred to him. Hauss, on the contrary, did disclose it, and, at that time, the Patent Office evidently was satisfied that this step in the process was patentably different from the prior art. At all events, we are convinced that there is no real basis in the Merrell application for the allowance of those claims, if they are to be given an interpretation consistent with the Hauss specification, in which they originated.

The decision is reversed and priority awarded Hauss.

*Reversed.*